57 CCPA

**Application of Charles B. VOGEL.**
**Patent Appeal No. 8339.**

United States Court of Customs
and Patent Appeals.
June 25, 1970.

T. E. Bieber, Emeryville, Cal., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge and ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–3, 5–7 and 10–24 of application serial No. 520,021, filed December 13, 1965, for Velocity Logger for Logging Intervals. Two claims have been allowed.

The invention is a system and method for obtaining a representation of the physical characteristics, e. g., density, of a less-than-one-foot-long portion of earth surrounding a borehole by acoustical logging.

The specification describes the system as including a downhole tool containing sending and receiving transducers spaced vertically less than one foot apart and operating at a frequency above 50 kc; means for urging the transducers into contact with the borehole wall; a gate circuit to generate a pulse of duration proportional to the travel time of an acoustical pulse between the transducers; a voltage generator whose output amplitude is proportional to the gate pulse duration; an oscillator whose frequency is proportional to the output amplitude of the generator (and hence proportional to travel time); and a recording system to record the oscillator output.

It is further disclosed that the transducers can be constructed so that the acoustical waves transmitted and received are in a narrow beam, 90% of the energy of the beam lying within a radiating angle of 30° on either side of the transducer axis. The use of these narrow beams enables either compressional or transverse wave measurements to be made, by mounting the transducers so that their axes form a pretermined acute angle with a normal to the wall. By appropriate selection of this angle, the receiving transducer can be made primarily responsive to compressional waves, or primarily responsive to transverse waves, as desired. It is also disclosed that both horizontal and vertical velocities, amplitudes and attenuations can be measured by providing a second set of transducers horizontally spaced apart. The necessary circuitry for electrical processing of the acoustical data is set forth. An additional variation is disclosed, whereby it is possible to measure both compressional and transverse wave characteristics, in both the horizontal and vertical directions, all simultaneously.

We shall analyze the claims in four groups.

#### (a) The first group

Claims 1, 5, 10, and 24 comprise a group of claims none of which is limited as to use of a narrow beam, angular disposition of transducers, or simultaneous

horizontal and vertical measuring means. Claims 10 and 24 are typical:

10. An acoustical logging system for logging formations penetrated by a borehole, said system comprising:

an elongated downhole tool having at least one transmitting transducer and at least one receiving transducer, one of said transmitting and one of said receiving transducers being located in a common plane substantially normal to the long axis of said tool and being spaced a distance of less than one foot;

means for urging said transducers into close proximity with said formations;

circuit means for energizing said transmitting transducer to generate a series of acoustical waves having a frequency exceeding 50 kilocycles per second; said acoustical waves being received by said receiving transducers and converted to related electrical signals;

a second circuit means coupled to said receiving transducers for converting said related electrical signals to an electrical signal indicating the transmission properties of the formations;

a transmission circuit coupled to said second circuit means for transmitting said electrical signal indicating the transmission properties of the formations to a surface recording system, said surface recording system recording the value of said electrical signal with relation to the disposition of the downhole tool within the borehole. (Paragraphing ours.)

24. A method for acoustic well logging which comprises: generating acoustic waves near one portion of the wall of an opening within the borehole of a well;

receiving acoustic waves emanating from a different portion of said wall at a point spaced from the point at which said waves are generated along a plane that is substantially normal to the axis of said opening within a borehole; and

altering the depth of the plane containing the points at which said acoustic waves are generated and received and indicating the variations with depths that occur in the waves that are received.

Claim 1 defines the electrical system more narrowly by reciting the gate circuit, voltage generator, and oscillator, which together are means for measuring wave velocities. Claim 5 recites the presence of at least two receiving transducers. These claims stand rejected as obvious over Loofbourrow [1] in view of Goodman.[2] Loofbourrow discloses an acoustical well-logging system comprising a transmitting transducer and two receiving transducers, all disposed along a vertical axis with the receivers placed two to three feet apart. The transmitting transducer produces ultrasonic waves, preferably in the range of 40–60 kc. An electrical system for measuring wave velocity is disclosed, consisting of a gate circuit, a voltage generator, an oscillator, and a depth-correlated surface recorder. As far as we can determine, the only significant features appearing in the claims under consideration and not appearing in Loofbourrow are the means for urging the transducers into contact with the borehole wall and the close spacing of the transducers. These features are shown in Goodman, which discloses an acoustical logging system in which the transducers are spring-biased against the borehole wall. The Goodman transducers are spaced 0.2 or 0.3 meters (.65 or .98 ft.) apart. Appellant contends that Goodman is improperly combined with Loofbourrow because Loofbourrow never appreciated the problems of close-interval logging and Goodman teaches a spacing of 0.3 meter only if a frequency of 10 kc is used, and a spacing of 0.2 meter only if an 11 kc frequency is used to obtain a 90° relationship between shear waves and com-

1. U. S. patent 2,931,455, April 5, 1960.

2. U. S. patent 2,943,694, July 5, 1960.

pressional waves. Our study of Goodman leads us to a conclusion opposite to appellant's assertion, since it appears that Goodman's teaching is that with higher frequencies, and correspondingly shorter wavelengths, even closer spacing of the transducers may be achieved. We see nothing in Goodman which would prevent modification of the Loofbourrow system to include the close spacing and spring bias as shown in Goodman. Accordingly, we affirm the board's decision as to claims 1, 5, 10 and 24.

### (b) *The second group*

Claims 6 and 7 form a pair of claims neither of which is limited as to use of a narrow beam or angular disposition of transducers, but which do recite the feature of simultaneous measurement of horizontal and vertical transmission properties. Claim 6 is illustrative:

6. An acoustical logging system for logging formations penetrated by a borehole, said system comprising:

a downhole tool having at least one transmitting transducer and four receiving transducers, two of said receiving transducers being spaced less than a foot from each other and disposed to one side of said transmitting transducer along a vertical axis, the other two of said receiving transducers being spaced less than a foot from each other and disposed in the same horizontal plane as said transmitting transducer;

circuit means for energizing said transmitting transducer to generate a series of acoustical waves having a frequency exceeding 50 kilocycles per second, said acoustical waves being received by said receiving transducers and converted to related electrical signals;

a second circuit means coupled to said two transducers for converting the related signals of said two receiver transducers to a first signal indicating the transmission properties of the formation in a vertical direction and transmitting it to a surface recording system;

a third circuit means coupled to the other two of said transducers for converting said related electrical signals to a second electrical signal indicating the transmission properties of the formation in a horizontal direction and transmitting said second electrical signal to said surface recording system and said surface recording system recording said first and second electrical signals with relation to the disposition of the downhole tool in the borehole. (Paragraphing ours.)

Claim 7 recites a "plurality of transducers" arranged both horizontally and vertically. Claims 6 and 7 were also rejected as obvious over Loofbourrow in view of Goodman. While the Loofbourrow transducers are vertically aligned, and hence are useful primarily in measuring vertical wave velocities, Goodman specifically states that the transducers "may be spaced from one another in a plane transverse to the longitudinal axis of the borehole," i. e., in a horizontal plane. Since simultaneous horizontal and vertical measurements require mere duplication of components, we agree with the examiner and the board that the provision in Loofbourrow of the additional apparatus for horizontal measurement would have been obvious. We therefore affirm the board's decision with regard to claims 6 and 7.

### (c) *The third group*

Claims 2 and 3 form a pair of claims, neither of which is limited as to angular disposition of transducers, but which do recite that the acoustical wave is in a narrow beam, 90% of the energy lying in an angle of 30° on either side of the transducer axis. Claim 2 is illustrative:

2. An acoustical logging system for logging formations penetrated by a borehole, said system comprising:

a downhole instrument having at least a transmitting transducer and a receiving transducer; said transducers being spaced from each other a distance of less than one foot;

means for urging said transducers into close proximity with the formation surrounding the borehole;

circuit means for energizing said transmitting transducer to generate a series of acoustical waves having a frequency exceeding 50 kilocycles per second and relatively narrow beam having 90 per cent of the effective energy within a beam radiating less than 30 degrees from the geometric axis of the transducer, said receiving transducer responding to a narrow beam of said waves and converting them to a related electrical signal;

a second circuit means for transmitting said related electrical signal to the surface and

recording means at the surface for recording the transmitted signal. (Paragraphing ours.)

Claim 3 recites "a plurality of transducers" on the downhole tool. Claims 2 and 3 were rejected as obvious over Loofbourrow in view of both Goodman and Peterson.[3] Peterson shows a well-logging system, one embodiment of which contains sending and receiving transducers each having parabolic reflectors. The reflector associated with the sending transducer causes the generated radiation, which may be ultrasonic, to be transmitted in a collimated beam. The reflector associated with the receiving transducer is apparently intended to render that transducer directionally sensitive. Appellant correctly points out that Peterson's primary purpose is to analyze the *surface* of a borehole wall, not to project waves into the wall and thereby determine interior characteristics of the formations surrounding the hole. Peterson accordingly places his transducers in the center of the hole and detects primarily waves reflected from the wall surface. Appellant contends that Peterson would not suggest employment of a narrow beam in a system like appellant's, the function of which system is to analyze wave transmission characteristics inside the formations sur-

rounding the hole. We note, however, that one of the reasons given by appellant for using a narrow beam is that, in conjunction with angular mounting, it enables the suppression of "waves traveling in well mud or * * * in the pad structure." This is undoubtedly the main reason for Peterson's use of a narrow beam, since Peterson's object is to examine a small portion of wall formation at a time and this would require suppression of or discrimination against waves coming from other places. This same result being desirable in the Goodman and Loofbourrow systems, it would have been obvious to employ the Peterson narrow beam in either of those systems. We realize that appellant had a more important reason for using narrow-beam transducers, namely, they permit, through appropriate angular adjustment, the system to be made primarily responsive to shear waves or to compressional waves, as desired. This additional reason, however, does not detract from our conclusion of obviousness. Even though Peterson may not have appreciated the added advantage, Peterson's teaching still suggests the employment of a narrow beam for the reason above stated, and we can discern nothing in Peterson which would lead persons skilled in the art away from such employment. Accordingly, the decision of the board is affirmed as to claims 2 and 3.

### (d) *The fourth group*

Claims 11–15 and 16–23 form a group of claims each of which contains the limitation either that the axes of the sending and receiving transducers intersect behind the wall surface, or, differently stated, that one or more of the transducers have their axes at an acute angle to a normal to the well wall. Claims 11–14 were rejected under 35 U.S.C. § 102 as anticipated by Peterson. The other claims were rejected under 35 U.S.C. § 103 on various combinations of references, all including Peterson.

---

3. U. S. patent 2,825,044, February 25, 1958.

We first consider claims 19–23. As to angular disposition of the transducers, each of these claims contains a limitation that the axes of the transmitting and receiving transducers intersect behind the wall of the borehole, and there is no other qualification on the angle. Claims 19 is illustrative:

19. An acoustic probing system for indicating acoustic properties of the wall of an elongated opening, which probing system comprises:

a probe means containing at least two spaced and oriented acoustic transducers, one being capable of generating acoustic waves having a frequency exceeding 50 kilocycles per second and one being capable of receiving said waves, and both having at least one major dimension equaling at least one wavelength of the frequency of said acoustic waves;

at least one wall-contacting pad means mounted on said probe means and disposed to maintain said spaced and oriented generating and receiving transducers in fixed orientations and spacings relative to each other and to the wall of an opening penetrated by said probe, with the geometric axes of at least one receiving and one generating transducer being aligned to at least substantially intersect behind said wall;

circuit means coupled to said spaced and oriented generating transducer for energizing said transducer to generate acoustic waves;

circuit means coupled to said spaced and oriented receiving transducer for producing electrical signals related to receptions of acoustic waves and transmitting signal components that are indicative of properties of said wall to a location remote from said probe; and

means remote from said probe means for receiving and responding to characteristics of said transmitted signal components.

As to these claims, we agree with the examiner and the board that the subject matter as a whole was rendered obvious by Peterson and Goodman in combination with either Loofbourrow or Blizard.[4] The principal issue appears to be whether it would have been obvious to move the Peterson device, with its angled transducers, close to the wall as in Goodman, thereby causing the transducer axes to intersect behind the wall. We conclude that it would have been obvious. Peterson states that part of his radiation penetrates into formations behind the wall, and that he is not measuring only waves reflected from the wall surface. It seems clear, then, that angled transducers would be seen from Peterson to be beneficial in devices where the transducer pad is pressed against the wall as in Goodman. Accordingly, we affirm the board's decision as to claims 19–23.

We next consider method claims 11–15. Claim 11 is the only independent claim of this group.

11. A method of acoustical well logging comprising: generating a narrow beam of acoustical waves at a point in a borehole, said waves having a frequency exceeding 50 kilocycles per second;

transmitting said narrow beam of acoustical waves towards the wall of the borehole at an angle of less than 90 degrees with respect to a normal to the wall of the borehole, the angle being chosen to minimize the compressional waves transmitted into the formations;

receiving said narrow beam of acoustical waves at a position spaced from the point at which the waves were generated, the direction of said receiving being at an angle of less than 90 degrees with respect to a normal to the wall of the borehole and oriented so that the directions along which said waves are transmitted and

4. U. S. patent 3,102,251, August 27, 1963. This reference shows the measurement of amplitude attenuation, as required by claims 18 and 23.

received substantially intersect behind the wall of the borehole; and

measuring the variation in the received waves as the points at which the waves are generated and received are moved through the borehole.

Claim 12 recites that the transducers have a dimension equal to at least one wavelength of the transmitted frequency. Claim 13 depends from claim 11 and specifies the transmission angle as 60°. Claim 14 also depends from claim 11 and specifies that the angle is chosen so that the waves cannot travel directly to the receiving position. Claim 15 depends from claim 11 and specifies that wave velocity through the formation is measured.

Claims 11–14 stand rejected as anticipated by Peterson, and claim 15 stands rejected as obvious over Peterson in view of Loofbourrow. Appellant contends that Peterson did not appreciate the difference between compressional and shear waves and therefore could not have disclosed a method for minimizing compressional waves, as required by claims 11–15. There is no dispute concerning Peterson's lack of express disclosure of minimizing compressional waves. The examiner, the board and the solicitor rely on inherent disclosure through Peterson's Fig. 9, reproduced below.

Peterson's specification states, with reference to Fig. 9, that either transducer 139 or transducer 140 may be the transmitter, with the other one the receiver. Assuming 140 to be the transmitter, it appears that the radiation, which Peterson says may be acoustical, travels in a path which prevents it from going directly to receiver 139 and that the axis of transducer 140 intersects a normal to the borehole wall at an angle of approximately 60°. While appellant stresses Peterson's ignorance of the difference between compressional and shear waves, the claims here differ from Peterson only in the recitation "the angle being chosen to minimize the compressional waves transmitted into the formations." This recitation appears to state a result inherently obtained by use of the Peterson apparatus. Appellant has failed to point out any way in which the Peterson apparatus of Fig. 9 could be operated without achieving that result. We therefore conclude that the rejection of claims 11–14 as inherently anticipated by Peterson was correct and must be affirmed. As to claim 15, appellant asserts the impropriety of combining Peterson and Loofbourrow, but we see no reason why the Loofbourrow system could not be modified to contain angled transducers. We accordingly affirm the rejection of claim 15.

Claims 16–18 are apparatus claims of which 16 is the broadest, claims 17 and 18 being dependent thereon.

16. An apparatus for acoustical well logging comprising:

at least one mounting pad having means for forcing said pad against the wall of the borehole;

at least two spaced acoustical transducers that are each mounted in said pad, at least one of said transducers being capable of generating acoustical waves having a frequency exceeding 50 kilocycles per second and the other transducer being capable of receiving said acoustical waves, said transducers in addition having a major dimension equal to at least one wave length of

[A2031] *FIG. 9.*

the frequency of said acoustical waves;

said transducers being mounted at an angle with their axes substantially intercepting angles of less than 90 degrees with respect to a normal from the wall of the borehole, said angle being approximately 60 degrees to minimize the response of the transducers to compressional waves;

means coupled to said generating transducer to generate a narrow beam of acoustical waves; and

measuring means coupled to said receiving transducers to measure a characteristic of the transducer signal of said other transducer as said pad is moved through a borehole.

Claims 16–18 stand rejected under 35 U.S.C. § 103 based on either Loofbourrow (claims 16 and 17) or Blizard (claim 18), each in view of Goodman and Peterson. Each of these claims involves transducers in a pad pressed against the wall. The transducers are not merely angled so that their axes intersect behind the wall as in claims 19–23, but at a specified angle of 60°, which appellant has disclosed as being an appropriate angle for minimizing compressional waves and maximizing shear waves. Peterson was applied against each of these claims as a secondary reference. The question is not one of novelty, but of obviousness. The issue comes down to whether, in a system having the measuring means of Loofbourrow or Blizard, it would have been obvious to use a pressed-against-the-wall pad for holding the transducers, as shown in Goodman, and to fix the transducer axes at approximately 60° to a normal to the borehole wall. We find that it would have been obvious, since Peterson's Fig. 9 above shows transducers mounted approximately at that angle, as contended by the examiner and not contested by appellant. Appellant has not convinced us of any reason why one skilled in the art would be led away from using the angle shown in Peterson. Appellant's better appreciation of the advantages of this angle is of no avail under these circumstances, since the prior art suggests the use of that very angle. Accordingly, we affirm the board's decision as to claims 16–18.

The decision of the board is affirmed

Affirmed.